right at the beginning to decline to defend the actions, being liable for $1,500 if the plaintiff had to pay that amount in consequence of any judgment recovered against him. I think it clearly had the same right, after the judgments were rendered, to say that it would proceed no further with the defense of the actions or the prosecution of the appeals; but, whenever the plaintiff was compelled to pay any judgment in favor of the injured employé, it would respond to the amount of its liability as fixed by the policy. That time has never arrived, because the plaintiff has never been held liable to the injured employé and has been compelled to pay no judgment. There has been no adjudication that the claims of Loughlin and his father were within the terms of the policy, but by the terms of the policy the plaintiff has not been compelled to pay any sum of money for which the defendant is liable. The undertaking to defend imposed no greater liability upon the defendant than it would upon a lawyer who had been employed to defend, namely, to exercise ordinary care and prudence and provide competent professional skill for conducting the litigation. It might be that, if there was evidence of any neglect in the performance of this obligation, the defendant would have been liable for damages caused by such neglect.

It seems to me, therefore, that on this record no cause of action was either alleged or proved, and the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.

---

(73 Misc. Rep. 575.)

SHELDON v. MacARTHUR, County Treasurer, et al.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

SHERIFFS AND CONSTABLES (§ 24*)—EMPLOYÉS—APPOINTMENT.

Laws 1911, c. 359, amendatory of Laws 1909, c. 16 (Consol. Laws 1909, c. 11) § 12, subd. 5, provides that boards of supervisors shall have power to fix the "mode of appointment" of the employés in any county office. Laws 1903, c. 9, § 8, as amended by Laws 1904, c. 4, § 1, as amended by Laws 1910, c. 243, § 3, provides that the sheriff of Rensselaer county may appoint certain employés of his office. *Held*, under such statutes, and under Laws 1909, c. 51 (Consol. Laws 1909, c. 47) § 9, Laws 1875, c. 482, § 1, subd. 2, Laws 1892, c. 686, and the county law (Laws 1909, c. 16 [Consol. Laws 1909, c. 11]), that the sheriff of Rensselaer county, and not the board of supervisors, had power to appoint the employés of the sheriff's office; the supervisors merely having power to fix the mode or manner of appointment.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig § 41; Dec. Dig. § 24.*]

Appeal from Special Term, Rensselaer County.

Action by Harry A. Sheldon against Arthur MacArthur, as County Treasurer of Rensselaer County, and others, to restrain payment

---

of certain salaries. From an order denying a motion to continue the injunction pendente lite, plaintiff appeals. Affirmed.

The following is the opinion of Chester, J., at Special Term:

The Legislature at its last session passed an act to amend the county laws in relation to the powers of boards of supervisors. The act (chapter 359, Laws of 1911) became a law June 16th of the present year. It amends subdivision 5 of section 12 of the county law (chapter 16, Laws of 1909, being chapter 11, Consolidated Laws), and provides that the boards of supervisors shall "have power to fix the amount and the time or manner of payment of the salary or compensation of any county officer or employé, except a judicial officer and the mode of appointment, number, and grade of the clerks, assistants or employés in any county office, notwithstanding the provisions of any general or special law fixing the amount of such salary or the time or manner of payment thereof, or providing for the mode of appointment, number or grade of the clerks, assistants or employés in any county office, or vesting in any other board, body, commission or officer authority to fix the amount of such salary or compensation or the time or manner of payment thereof or to provide for the mode of appointment, number, or grade of the clerks, assistants or employés in any county office; and the power hereby vested in the board of supervisors shall be exclusive of any other board, body, commission or officer, notwithstanding any general or special law."

After the taking effect of this amendment and on July 31, 1911, at a special meeting of the board of supervisors of Rensselaer county, the following was adopted:

"Pursuant to authority conferred by chapter 359 of the Laws of 1911, be it resolved, that the clerks, assistants and employés in all county offices in the county of Rensselaer shall. hereafter be appointed by this board and by a majority vote of the members thereof."

This is a taxpayer's action brought to restrain the county treasurer from paying the salaries of the persons occupying the positions of undersheriff, cook at the jail, jailer, and assistant jailer at the jail in the county of Rensselaer, all of whom are defendants in the action, and all of whom were appointed by the present sheriff of that county. When the present sheriff was appointed and took possession of his office, there was an undersheriff, a jailer, an assistant jailer, and a cook at the jail who had been appointed to these respective positions by the prior incumbent of the office of sheriff. Soon after taking the office and on the 29th day of August last, the new sheriff discharged these officials and employés and appointed the others in their places who are named as defendants in this action. On the same day the board of supervisors of the county in special session passed a resolution reciting that a vacancy existed in the office of undersheriff, assistant jailer, and cook, employés and assistants at the Rensselaer county jail, by reason of the discharge of said officials, and voted that pursuant to the authority conferred by chapter 359 of the Laws of 1911, and the said resolution of the board passed July 31, 1911, these officials should be appointed by the board. The board thereupon made an appointment of four other persons to fill the positions in question. This results in two sets of officials, both claiming that they are lawfully entitled to the positions and the emoluments thereof.

A temporary injunction has been granted in the action restraining the county treasurer from paying the salaries of the defendants who are the appointees of the present sheriff, and this motion is to continue that injunction during the pendency of the action.

The only question presented here for determination is as to whether the assistants and employés in the sheriff's office can be legally appointed by the board of supervisors under the law as it now stands, or whether they should be appointed by the sheriff. They have been appointed from time immemorial by the sheriff, but the board now claims the right to make the appointments because in the amendment referred to it is given power to fix "the mode of appointment," and the board has determined, under that au-

thority, that it would make the appointments itself. There would possibly be some foundation for this contention if these words were new in the amendment. But they are not new. They have been in the statute for many years. It appears that subdivision 5 of section 12 of the county law, which the act of this year amends, was originally taken with some changes from subdivision 2 of section 1 of chapter 482, Laws of 1875, and was inserted in the county law when it was enacted as chapter 686, Laws of 1892. The law as originally passed in 1875 and continued in 1892 gave the boards of supervisors power to prescribe the mode of appointment and fix the number, grade, and pay of the clerks, assistants, and employés of certain county officers. As first carried into the county law, this power to prescribe the mode of appointment related only to the offices of the county treasurers, district attorneys, and superintendents of the poor. The provision containing that power continued and was carried into the county law as it appeared in the Consolidated Laws of 1909, and remained the law until the amendment of this year. So far as appears, during all the years in which this provision has been in the law, no board of supervisors in the state has assumed to make any appointments of subordinates in the offices of the county treasurers, district attorneys, and superintendents of the poor. Substantially the same expression concerning the "mode of appointment" is carried in the amendment of this year. The purpose of the amendment appears to be clear, and was not to change the law at all in that respect, but to enlarge it so that it shall apply to all county officers except judicial officers as well as to county treasurers, district attorneys, and superintendents of the poor. But even if the power to fix "the mode of appointment" was by that language in the amendment now given to the boards of supervisors for the first time, it would in my opinion come far short of giving the boards the *power of appointment* which is quite another thing. The power of appointment at the time of the passage of the amendment of this year, and for a long time prior thereto, belonged, under the express terms of other provisions of law, to the officers whom these clerks, assistants, and employés were to serve (section 9, Public Officers' Law, c. 51, Laws 1909; Consolidated Laws, c. 47), and with respect to the office of sheriff of Rensselaer county it is provided, in section 8 of chapter 9 of the Laws of 1903, as amended by chapter 4 of the Laws of 1904, as amended by section 3 of chapter 243 of the Laws of 1910, the sheriff shall appoint and may at pleasure remove an undersheriff, three deputies, and a cook; of said deputies one shall be jailer, one an assistant jailer, and one a night watchman. There is no express repeal of this provision, and if the Legislature intended, by the amendment of this year and by carrying the language of the old law into the new law with respect to the mode of appointment, to give to the board of supervisors the power of appointment, it should have said so by clear and unmistakable language, and that it has not done. I think it is reasonable to say that, when the Legislature used the expression in the law of this year and took it bodily from the law as it existed before the amendment, it did so in view of the well-understood fact that in all the counties of the state no board of supervisors had ever assumed that it had the power to make appointments of the assistants and employés in the county offices of their respective counties.

The language in question means now, as it did before the amendment, that the boards of supervisors may prescribe or fix the mode or manner in which those to whom the power of appointment is given by law may exercise that power, and does not mean now any more than it did before the amendment that the boards of supervisors could lawfully take unto themselves the power of appointment.

It is apparent that the Legislature did not intend by the amendment to make any change whatever with respect to the power of appointment, nor to take that power from those who had theretofore exercised it under the law and give it to the boards of supervisors.

If this construction is correct, the appointments made by the board of supervisors were without authority of law, and the persons appointed by the present sheriff lawfully hold their respective positions and are entitled to have their salaries paid.

For these reasons the motion to continue the temporary injunction should be denied, with $10 costs, and the temporary injunction dissolved.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Chester G. Wager, for appellant.
John T. Norton, for respondent Snell.
John P. Kelly, for respondents Toole, Dimilick, and Roddy.
John P. Taylor, for respondent County Treasurer.

PER CURIAM. Order affirmed on opinion of Chester, J., at Special Term, with costs to defendants, other than the county treasurer, against the plaintiff.

(148 App. Div. 141.)

SECOR et al. v. TRADESMEN'S NAT. BANK OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. PARTNERSHIP (§ 245*)—POWERS OF SURVIVING PARTNER.

A sole surviving partner being the legal owner of the firm assets, he can make a valid release of a claim against a bank for money collected by it for the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 514–518; Dec. Dig. § 245.*]

2. RELEASE (§ 27*)—PERSONS AFFECTED.

A release signed by a surviving partner, releasing a bank "from all claims on account of moneys received by the bank or others," did not release any one except the bank from claims for money owing the firm.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 53–56; Dec. Dig. § 27.*]

3. ATTORNEY AND CLIENT (§ 117*)—DUTIES—ACCOUNTING.

An attorney is bound to account for money received by him belonging to his client.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 232, 234, 235; Dec. Dig. § 117.*]

Appeal from Special Term, New York County.

Action by James F. Secor, Jr., and another, as executors of James F. Secor, deceased, surviving partner of the firm of Burgess & Secor, against the Tradesmen's National Bank of the City of New York and others. From a judgment for defendants, plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, SCOTT, and DOWLING, JJ.

Philip Carpenter, for appellants.
Marshall Snyder, for respondents.

DOWLING, J. The firm of Burgess & Secor, composed of Phineas Burgess, Charles A. Secor, and James F. Secor, was interested, prior to the year 1884, in a contract made with the government of the United States for the construction of a monitor. The firm had

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes